In the United States District Court
for the Southern District of Ohio
Eastern Division at Columbus

| | |
|---|---|
| William McGrothers,<br><br>*On behalf of himself and those similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>GT Pizza, Inc., *et al*;<br><br>Defendants. | Case No. 2:20-cv-4050<br><br>Chief Judge Algenon L. Marbley<br><br>Magistrate Judge Elizabeth Preston Deavers |

Plaintiff's Unopposed Motion for Approval of Wage and Hour Settlement

Plaintiff William McGrothers asks that the Court grant approval of the parties' Settlement Agreement, attached as Exhibit 1, order the parties to carry out the terms of the Settlement Agreement, and dismiss the case with prejudice. The Settlement Agreement resolves the opt-in Plaintiffs' claims for mileage under-reimbursement and tip credit claims under the Fair Labor Standards Act and Ohio wage and hour law.

Respectfully submitted,

*/s/ Andrew Kimble*
Andrew R. Biller (0081452)
Andrew P. Kimble (0093172)
Emily Hubbard (0096032)
Biller & Kimble, LLC
8044 Montgomery Rd., Ste. 515
Cincinnati, OH 45236
Telephone: (513) 202-0710
Facsimile: (614) 340-4620

1

*abiller@billerkimble.com*
*akimble@billerkimble.com*
*ehubbard@billerkimble.com*

Memorandum in Support of Plaintiff's Unopposed Motion For Approval of Settlement

1. **Introduction**

The parties have entered into a Settlement Agreement to resolve this case. The parties seek an order (1) granting final approval of the Settlement Agreement as fair, reasonable, and adequate; (2) approving the requested award of attorney's fees and costs; (3) approving the service awards; (4) dismissing the action with prejudice; and (5) ordering the parties to carry out the remaining terms of the Settlement Agreement. Defendants do not oppose this request.

2. **Standard of Approval for an FLSA Settlement.**

In evaluating an FLSA settlement, the Court's role "is comparable to that of a court in a settlement of a class action…" *Kritzer v. Safelite Sols.*, LLC, No. 2:10-cv-0729, 2012 U.S. Dist. LEXIS 74994, at *19 (S.D. Ohio May 30, 2012). The Court must ensure that the settlement is (1) the product of a bona fide dispute, (2) fair, reasonable, and adequate, and (3) reached through arms-length negotiation. *Id.* at *5–6. As described below, the proposed settlement meets this standard.

3. **Background of the Lawsuit and Claims**

Plaintiff William McGrothers delivered food for Defendants' Domino's franchise stores in Grove City, Ohio. On August 7, 2020, Plaintiff filed this lawsuit on behalf of himself and similarly situated delivery drivers in Ohio. *See* Doc. 1. Plaintiff's Complaint alleges several wage and hour violations.

3

Plaintiff's first and second counts claim that Defendants under-reimbursed delivery drivers for the expenses that drivers incurred in being required to use their own cars to deliver food. Because Defendants paid the drivers at or below full minimum wage (*i.e.*, Defendants paid a tipped wage), any under-reimbursement could trigger a claim for unpaid minimum and overtime wages under the FLSA and Ohio law.

Plaintiff's third count asserts a claim for additional, liquidated damages under Ohio's Prompt Pay Act Claim. Plaintiff's Prompt Pay Act claim can be contingent on an underlying wage and hour violation. *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 385, n.1 (6th Cir. 2016). Still, for Plaintiff to prevail on the liquidated damages claim (as opposed to just repayment of unpaid wages alone), she needs to show that there is no dispute regarding the underlying unpaid wages. O.R.C. 4113.15(B).

Finally, Plaintiff's fourth count alleges civil liability for a criminal act under O.R.C. § 2307 on behalf of Ohio delivery drivers.

Defendants filed an Answer denying liability and asserting affirmative defenses to Plaintiff's claims. The parties jointly moved the Court to conditionally certify the case as a FLSA collective action and to effectuate notice to similarly situated delivery, which the Court granted. See Docs. 13 and 14. Notice was sent to all similarly situated delivery drivers and 194 delivery drivers (collectively with Mr. McGrothers, "Plaintiffs") opted-in to the case.

4. **Summary of Settlement Terms**

The settlement agreement creates a settlement fund of $650,000.00, inclusive of attorney's fees, expenses, and service awards. *See* Exhibit 1. Under the terms of the Agreement, each class member who worked for Defendants and who filed a consent to join form with the court on or

before the date the parties move for approval of the settlement will receive a share of the settlement fund equal to the Collective Member's prorated share of the net settlement fund based on their number of hours worked during the relevant time period.

As part of the settlement, Defendants agree not to oppose Plaintiff's counsel's request for a fee award of 33.33% of the common fund, reimbursement of advanced expenses, and a $10,000 service award for Plaintiff. The Agreement also provides that the costs of settlement administration will be deducted from the settlement fund.

**5. The settlement provides for a fair resolution of disputed claims.**

The most important factor to consider when evaluating a proposed settlement is Plaintiff's probability of success on the merits. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *19. To evaluate this factor, Plaintiff will describe the facts and law underlying his primary claims.

**5.1. Under-reimbursement Claim**

It is undisputed that food delivery companies must pay their minimum wage workers for expenses incurred as a result of the workers using their own cars for deliveries. The real dispute is over how much Defendants should have reimbursed.

Plaintiff claims that Defendants have two options: (1) track and reimburse each drivers' actual expenses or (2) reimburse the drivers at the IRS standard business mileage rate. First Amended Complaint, Doc. 35, ¶¶ 237–242. *See, e.g., Waters v. Pizza to You*, No. 3:19-cv-372, 2021 U.S. Dist. LEXIS 87604 (S.D. Ohio May 7, 2021); *Hatmaker v. PJ Ohio, LLC*, No. 3:17-cv-146, 2019 U.S. Dist. LEXIS 191790 (S.D. Ohio Nov. 5, 2019); *Brandenburg v. Cousin Vinny's Pizza*, No. 3:16-cv-516, 2019 U.S. Dist. LEXIS 204371 (S.D. Ohio Nov. 25, 2019). Defendants disagree with Plaintiff's allegations that they were required to reimburse at the IRS rate. Instead,

Defendants argue that they are only required to "reasonably approximate" the drivers' incurred expenses for reimbursement. 29 C.F.R. § 778.217(b)(3); FLSA 2020-12 (August 31, 2020).

Defendants reimbursed delivery drivers for their vehicle expenses by paying them a flat rate of approximately $1.40 per delivery, regardless of how many miles they drove. Nonetheless, Plaintiff estimates that the unpaid wages for this claim, if calculated at the IRS rate, are approximately $333,586.00. In addition, Plaintiff would have sought an additional 1× unpaid wages as FLSA liquidated damages and an additional 2× unpaid wages as Ohio Constitution damages. *See* 29 U.S.C. § 260; Oh. Const., Art. II, § 34a.

**5.2. Tip Credit Violation Claim**

Plaintiff asserts that Defendants improperly took a tip credit for hours worked while making deliveries by failing to pay the agreed-upon wage rate by under-reimbursing Plaintiffs for delivery expenses.

Pursuant to section 3(m), an employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the provisions of section 3(m).[1] Here, Plaintiff alleges that Defendants failed to *actually pay* the wage rate they promised to pay, after accounting for kickbacks, and therefore cannot avail themselves of the tip credit even if they properly informed Plaintiffs of it. *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *4 (S.D. Ohio May 17, 2021); *see also, e.g., Meetz v. Wis. Hospitality Grp., LLC*, 16-cv-1313, 2017 U.S. Dist. LEXIS 138380, at *12-14 (E.D. Wisc. Aug. 29, 2017) (explaining that an

---

[1] (1) the amount of the cash wage that is to be paid to the tipped employee by the employer; (2) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; (3) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (4) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section. 29 C.F.R. § 531.59.

employer cannot retroactively claim a greater tip credit than they informed employees they would be claiming. The notice requirement is "strictly construed," and must be complied with even if the employee receives tips at least equivalent to minimum wage. *See, e.g., Chung v. New Silver Palace Restaurant, Inc.*, 246 F.Supp.2d 220, 229 (S.D.N.Y. Sept. 13, 2002).

Maintaining that all drivers were appropriately compensated and reimbursed, Defendants disagree with Plaintiff's tip credit claim in its entirety. The value of this claim is predicated on the under-reimbursement claim. On one hand, if Defendants could prove the reimbursement rate covered all expenses, its value would be $0. On the other hand, if there is a valid under-reimbursement claim, its value is approximately $225,000.00.

### 5.3. Prompt Pay Act Claims

Plaintiff also asserts a claim under Ohio's Prompt Pay Act, O.R.C. § 4113.15. This claim essentially has two components—unpaid wages and liquidated damages.

The unpaid wages portion can "rise and fall" with an underlying wage violation (*i.e.*, like an FLSA violation). *See, e.g., Parks v. Cent. USA Wireless,* LLC, No. 1:17-cv-448, 2019 U.S. Dist. LEXIS 167502, at *15 (S.D. Ohio Sep. 29, 2019). Because the damages for this claim mirror the unpaid wages for the above violations, the analysis is the same (obviously, Plaintiff may only recover unpaid wages once).

The liquidated damages portion, however, is only available when there is no dispute as to the underlying wages. O.R.C. § 4113.15(B). Here, there is arguably a dispute over whether the unpaid wages were due. If Plaintiff prevailed on this claim, the class members could have been awarded an additional $200 each per pay period.

### 5.4. Other Considerations

7

When evaluating settlements, courts also look at other factors, including (1) the complexity, expense, and likely duration of the litigation; (2) the stage of the proceedings and amount of discovery completed; (3) the judgment of experienced trial counsel; (4) the nature of the negotiations; (5) any objections from class members; (6) the objections, if any, raised by class members; and (7) the public interest. *Kritzer*, 2012 U.S. Dist. LEXIS 74994, at *20. Each factor is addressed below.

**Complexity, expense, and likely duration.** Wage and hour class and collective actions are inherently complex and time-consuming. *Arledge v. Domino's Pizza, Inc.*, No. 3:16-cv-386-WHR, 2018 U.S. Dist. LEXIS 179474, at *5 (S.D. Ohio Oct. 17, 2018). This case also presented a unique complexity because the Defendants asserted that some, but not all, of the Collective Members had entered into arbitration agreements. Thus, if the case were to proceed, the parties would potentially be required to litigate 170 individual arbitrations as well as a FLSA Collective Action for the Collective Members that did not enter into arbitration agreements. This factor supports approving the proposed settlement.

**The stage of the proceedings and amount of discovery completed.** This case settled early in the proceedings, but after the parties had exchanged sufficient discovery to evaluate the strengths and weaknesses of each claim. Specifically, Defendants produced payroll records relating to the delivery drivers' hours worked and wages paid, and records of the reimbursement payments made to delivery drivers. Defendants also produced to Plaintiff sampling records of deliveries completed. Plaintiff evaluated this data through excel software designed to track miles driven and number of deliveries per run. This data formed the basis of the parties' settlement negotiations. In light of these factors, the parties are able to properly evaluate settlement at this stage.

8

**The judgment of experienced trial counsel.** Plaintiff's counsel attests that, given the strengths and weaknesses of the claims and collectability, this settlement is fair, adequate, and reasonable. Plaintiff's counsel are well-versed in delivery driver cases. *See Mullins v. Southern Ohio Pizza, Inc.*, No. 1:17-cv-426, 2019 U.S. Dist. LEXIS 11019, at *5 (S.D. Ohio Jan. 18, 2019). Defendants' counsel are likewise experts in employment law.

**The nature of the negotiations.** The parties reached the above settlement only after substantial negotiations, which included a full-day mediation with Jerome F. Weiss, an experienced and respected neutral. Although the parties were not able to reach an agreement at the close of the mediation, the parties continued to work with Mediator Weiss over the course of several months to reach a reasonable resolution. This factor supports approving the proposed settlement.

**Any objections from class members.** Each of the Collective Members have affirmatively opted-in to this litigation and delegated settlement authority to Plaintiff William McGrothers.

**The public interest.** The public interest generally favors settling class action litigation. This case is no different.

**5.5. The payment of attorneys' fees and costs is reasonable.**

Plaintiff's Counsel seeks one third of the settlement fund as attorneys' fees ($216,666.66), plus reimbursement of advanced litigation costs. Defendants do not to object to this award, which is a standard amount in this type of case. *See, e.g.*, *Neal v. Hallsons of Leb., Inc.*, S.D.Ohio No. 1:20-cv-00672, 2022 U.S. Dist. LEXIS 42664, at * 2 (S.D. Ohio Mar. 2, 2022); *Mullins v. Data Mgt. Co.*, No. 1:20-cv-214, 2021 U.S. Dist. LEXIS 124891, at *17 (S.D. Ohio June 21, 2021); *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, at *13; *McConnell*, 2021 U.S. Dist. LEXIS 92836, at *21;*Arp v. Hohla & Wyss Ents., LLP*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, at *15 (S.D.

9

Ohio Nov. 5, 2020).The FLSA and the Ohio Constitution provide the right to attorneys' fees for a party who recovers unpaid wages. 29 U.S.C. § 216(b); Oh. Const., Art. II, Section 34a.

When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F.Supp.2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citation omitted). Second, the court must analyze the six factors set forth by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). *Id.*

**5.5.1. The Court should adopt the percentage approach.**

First, the Court must decide if it will award fees based on either the "percentage-of-the-fund" or "lodestar." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 761. "This flexible approach allows the Court to account for the unique and varied circumstances present in each class action." *Arp*, 2020 U.S. Dist. LEXIS 207512, at *16.

The "percentage approach is 'the most appropriate method for determining reasonable attorneys' fees' in wage and hour cases." *Id.*, *quoting Hebert v. Chesapeake Operating, Inc.*, 2019 U.S. Dist. LEXIS 160792, at *11 (S.D. Ohio Sept. 20, 2019), *and Swigart v. Fifth Third Bank*, 2014 U.S. Dist. LEXIS 94450, at *14-15 (S.D. Ohio July 11, 2014). It is, therefore, the "preferred method in this district." *Id.* "Absent compelling reasons to the contrary," courts in the Southern District of Ohio prefer the percentage method in wage and hour cases, "as it best reflects FLSA's employee-protection objective." *Dewald v. Time Warner Cable Inc.*, No. 16-cv-1129, 2021 U.S. Dist. LEXIS 32459, at *16 (S.D. Ohio Feb. 16, 2021).[2] "[T]he percentage approach encourages

---

[2] In wage and hour cases, the "compelling circumstances" that give rise to application of the lodestar method usually involve a situation where a plaintiff or a class of plaintiffs' damages are relatively small, but they have suffered damages

efficiency, judicial economy, and aligns the interests of the lawyers with the class []." *In re Cardinal Health Inc. Sec. Litigs.*, 528 F.Supp.2d at 762. "While the lodestar approach incentivizes attorneys to work more hours, without regard to the quality of the output or the class's needs, the percentage approach instead 'rewards counsel for success and penalizes it for failure.'" *Id.*

Here, the Court should adopt the percentage of the fund approach and award class counsel 1/3 of the settlement fund in attorneys' fees. An award of one-third "is a normal fee amount in a wage and hour case." *Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *14-15; *see also, e.g.*, *Arp*, 2020 U.S. Dist. LEXIS 207512, at *15-16 (awarding one-third, noting "no reason in this case to deviate from the norm"); *Osman v. Grube, Inc.*, No. 3:16-cv-802, 2018 U.S. Dist. LEXIS 78222, at *6 (N.D. Ohio May 4, 2018)( "One-third of the common fund is a reasonable attorneys' fee award 'and has been approved in similar FLSA collective actions in this judicial district.'"); *Carr v. Bob Evans Farms, Inc.*, No. 1:17-cv-1875, 2018 U.S. Dist. LEXIS 228221, *10-11 (N.D. Ohio July 27, 2018) ("In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund.").[3]

---

nonetheless. In such a circumstance, counsel is often required to expend substantial attorney time—sometimes accruing fees many times greater than the value of the case—in order to help workers recover their wages. It is essential to the proper functioning of the FLSA and associated state laws that lawyers who undertake these cases be compensated for these important efforts. This is the type of "compelling circumstance" that augers in favor of applying a lodestar method in a wage and hour class/collective action settlement. *See Arp*, 2020 U.S. Dist. LEXIS 207512, n. 1; *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 615 (6th Cir.2021) (reversing and remanding fee award limited to a percentage of recovery in wage case).

[3] *See, e.g.*, *In re Foundry Resins Antitrust Litig.,* No. 04-md-01639, Doc. 245 (S.D. Ohio Mar. 31, 2008) (order awarding a fee of 33 1/3% of a $14.1 million dollar settlement); *In re Packaged Ice Antitrust Litig.*, No. No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at *76 (E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.") (Internal citations omitted); *In re Skelaxin Antitrust Litig.*, No. 2:12-cv-83, 2014 U.S. Dist. LEXIS 91661, at *4 (E.D. Tenn. June 30, 2014) (finding "the requested counsel fee of one third is fair and reasonable and fully justified."); *Thacker v. Chesapeake Appalachia*, LLC, 695 F. Supp. 2d 521, 528 (E.D. Ky. 2010) ("Using the percentage approach, courts in this jurisdiction and beyond have regularly determined that 30% fee awards are reasonable."); *Kimmel v. Venture Construction Co.*, Case No. 1:10-cv-01388-RLV (N.D. Ga. 2010) (Dkt. 70) (approving 30% of common fund as attorneys' fees and costs); *Moultry v. Cemex, Inc.*, No. 8:07-cv-00453- MSS, Dkt. 145 (M.D. Fla. 2008) (awarding 32.25% of common fund as attorneys' fees); *Kemper v. Rent-A-Center, Inc.,* Case No. 4:00-cv-00435-RH-WCS, Docs.

This case presents a good example of why the percentage method is preferred in this district. The Parties agreed to conditionally certify the case as a collective action and agreed to the production of discovery and early mediation, based largely on counsel's expertise from and work in other pizza delivery driver cases. In other words, instead of seeking to "churn" hours, counsel sought right away to set an advantageous and streamlined legal course to effectuate an efficient resolution. This advocacy has resulted in a substantial benefit to the class. While the lodestar method could potentially punish class counsel for their efficient and aggressive approach, the percentage method rewards class counsel, as it should.

### 5.5.2. The *Ramey* Factors

Next, the Court must analyze the six *Ramey* factors to ensure the attorneys' fee award is reasonable: (1) the value of benefits rendered to the class; (2) society's take in rewarding attorneys who produce such benefits in order the maintain an incentive to others; (3) whether the services were undertaken on a contingent basis; (4) the value of the services on an hourly basis (*i.e.*, a lodestar crosscheck); (5) the complexity of the litigation; and (6) the professional skill and standing of counsel on both sides. *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974). Each of these factors weigh in favor of approving the fee.

First, the settlement results in a substantial benefit to the class. Based on the data produced by Defendants prior to mediation, the settlement proceeds exceed the amount of total unpaid wages. After deducting the requested attorneys' fees, litigation costs, administrative costs, and

---

14-15 (N.D. Fla. 2000) (awarding 33.33% of common fund approach to plaintiffs' counsel). In *In re AremisSoft Sec. Litig.*, 210 F.R.D. 109, 134 (D.N.J. 2002), the court stated that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund." *See, e.g.*, *Erie County Retirees Ass'n v. County of Erie*, 192 F. Supp. 2d 369, 382-83 (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case); *Gilliam v. Addicts Rehab. Ctr. Fund*, Case No. 05 Civ. 3452, 2008 U.S. Dist. LEXIS 23016, at *15 (S.D.N.Y. Mar. 24, 2008) (finding it reasonable to award class counsel a fee of one-third of the common fund).

incentive award, the settlement proceeds still provides over 90% of the Collective Members' unpaid wages. This is an excellent result considering there was a chance the drivers could have lost altogether. Compare *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding settlement of 10% of the total amount sought is adequate due to risks and costs of trial); *Viceral v. Mistras Group, Inc.*, No. 15-cv-02198, 2016 U.S. Dist. LEXIS 140759, *21 (N.D. Cal. Oct. 11, 2016) (in class action for owed wages, settlement payment equal to 11.6% and 5.2% of estimated value of state and federal claims is fair and reasonable in light of strength and variability of claims and risks on merits); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, *12 (N.D. Ohio Mar. 8, 2010) (finding recovery of one-third of owed wages for class members, before deducting attorney's fees and costs, is "well above… average."). This factor supports the requested fee award.

Second, there is a benefit to society in ensuring that claimants with smaller claims may pool their claims and resources, and "the societal benefit is particularly acute in wage and hour cases brought on behalf of minimum wage workers." *Arp*, 2020 U.S. Dist. LEXIS 207512, *17-18. "The attorneys who take on class action cases enable this." *Id.*, citing *Moore v. Aerotek, Inc.*, No. 2:15-cv-2701, 2017 U.S. Dist. LEXIS 102621, *26-27 (S.D. Ohio June 30, 2017). Society has a strong interest in rewarding lawyers who bring cases for unpaid wages. *Neal v. Hallsons of Leb., Inc.,* S.D. Ohio No. 1:20-cv-00672, 2022 U.S. Dist. LEXIS 42664 (Mar. 2, 2022); *see also Smith v. Local Cantina, LLC*, S.D.Ohio No. 2:20-cv-03064, 2022 U.S. Dist. LEXIS 73598 (Apr. 19, 2022) ("The Supreme Court has repeatedly held that FLSA rights are so important as to be wholly non-waivable. A strong public policy exists to compensate lawyers who take on these cases—typically on behalf of low-wage workers with few resources and against well-funded employers. These cases

13

entail substantial risk, time, effort, and expertise to successfully litigate. It is therefore important that the lawyers who assume this type of representation be compensated in a way that is commensurate with the resources required to do so. To do otherwise would undermine Congress's goal of encouraging private enforcement of FLSA rights.") (internal citations omitted).

Third, counsel undertook this case on a wholly-contingent basis, with no guarantee of recovery. *See* Hubbard Decl., Doc 66-2, ¶19. This supports the proposed fee award.

Fourth, while a lodestar cross-check is not required, it supports the requested attorneys' fees award. Plaintiff's counsel has worked hours on this case for a total lodestar of $103,320.00. This results in an average hourly rate of $354.60 and a lodestar multiplier of 2.1. *See* Hubbard Decl., Doc. 66-2, ¶17,21. As numerous courts have found, counsel for the Plaintiffs have developed a deep level of expertise in the niche practice of challenging the sufficiency of delivery driver reimbursements. *Id.* citing *Arp v. Hohla & Wyss Enters., LLP*, 2020 U.S. Dist. LEXIS 207512, at *20 (S.D. Ohio Nov. 5, 2020). That expertise has allowed them to represent Plaintiff and the Collective effectively and efficiently. *Id*.

In addition to the hours class counsel has worked on this particular pizza delivery driver case, Biller & Kimble, LLC has worked thousands of hours on pizza delivery driver cases and other types of wage and hour cases throughout the country in recent years. *See Brandenburg II*, 2019 U.S. Dist. LEXIS 204371, at *6 (noting counsels' expertise in this specific area of law); *Arp*, 2020 U.S. Dist. LEXIS 207512, at *20-21 (explaining that it is appropriate to consider work on similar cases in deciding whether a fee is reasonable). These hours informed class counsel's work in this case and made them more efficient.

Further, Plaintiff's counsel will put in more time on this case after final approval. "Class Counsel frequently spend additional time, sometimes significant time, dealing with class members' inquiries, administration issues, and other post-approval matters." *Arp*, 2020 U.S. Dist. LEXIS 207512, at *19. This factor supports the requested fee award. *See, e.g., Id.* (approving 5.29 multiplier); *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 U.S. Dist. LEXIS 181476, at *17 (S.D. Ohio Dec. 21, 2012) (approving a 3.06 multiplier and citing cases that found multipliers ranging from 4.3 to 8.5 to be reasonable). In light of class counsel's experience and expertise in wage and hour law, their hourly rates are appropriate, and their lodestar multiplier of 2.1 is reasonable.

Fifth, courts have held wage and hour cases to be "inherently complex," and that these delivery driver reimbursement lawsuits "turn on a web of statutory and regulatory issues." *Mullins*, 2021 U.S. Dist. LEXIS 124891, at *9; *Neal*, 2022 U.S. Dist. LEXIS 42664, at *4. Wage and hour cases often raise complex legal issues involving the changing landscape of federal and state law, regulations, agency guidance, and case law. *Smith*, 2022 U.S. Dist. LEXIS 73598 at *17. Here, the operative legal standard for determining minimum wage compliance in the context of delivery drivers is contested, and involves complex issues involving a split of authority, statutory interpretation, and agency deference. This factor supports approval of the requested fee award.

Sixth, the attorneys for both sides are skilled litigators experienced with these specific claims, as well as class and collective actions. Hubbard Decl., Doc. 66-2, ¶¶25-30. Similarly, Michael Mattingly, a partner with Dinsmore & Shohl LLP, is likewise a highly experienced employment lawyer and litigator. This factor supports the requested fee award.

15

Because all of the *Ramey* factors support the requested fee award, Plaintiff requests the Court award class counsel 1/3 of the settlement fund as attorneys' fees. Finally, Plaintiff's counsel incurred $11,850.51 in advanced litigation costs in pursuit of this case. These costs relate to the filing fee, mediation fees, and costs associated with analyzing Defendants' mileage and reimbursement records. These costs are reasonable and should be awarded to class counsel out of the settlement fund.

**5.6. The incentive payment is reasonable.**

The incentive payment is reasonable, and similar payments are routinely awarded. "Courts routinely approve incentive awards to compensate named plaintiff for the services they provide and the risks they incurred during the course of the class action litigation." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997); *see also Dun & Bradstreet*, 130 F.R.D 366, 374 (S.D. Ohio 1990) (approving incentive awards to class representatives for their time and expenses incurred pursing the litigation). Such compensation for time, effort, risk, and service does not improperly grant preferential treatment to class representatives. The settlement agreement earmarks $10,000 to Plaintiff for his work in bringing and prosecuting the case on behalf of the delivery drivers. This amount equal to the amounts awarded in similar pizza delivery driver cases.[4] Plaintiff has spent time and effort working with Class Counsel on this case. As in any case, Plaintiff bore risk in proceeding with the case, including financial and reputational risk. Without Plaintiff's participation, this class settlement would not have occurred.

---

[4] *See Arledge*, 2018 U.S. Dist. LEXIS 179474, *6; *Mullins*, 2019 LEXIS 11019, *6; *Brandenburg*, 2019 U.S. Dist. LEXIS 204371, *7-8; *Casteel v. Antonio's Pizza, Inc.*, No. 1:18-cv-1277, Doc. 52 (N.D. Ohio May 17, 2019); *Arp v. Hohla & Wyss Enterprises, LLC*, No. 3:18-cv-119, 2020 U.S. Dist. LEXIS 207512, *7 (S.D. Ohio Nov. 5, 2020).

**6. Conclusion**

Plaintiff now seeks an order (1) granting approval of the Settlement Agreement filed as Doc. 65-1 as fair, reasonable, and adequate; (2) approving the requested award of attorney's fees and costs; (3) approving the service award; (4) dismissing the action with prejudice; and (5) ordering the parties carry out the remaining terms of the Settlement Agreement. Defendants do not oppose this request.

                Respectfully submitted,

                */s/ Andrew Kimble*
                Andrew R. Biller (0081452)
                Andrew P. Kimble (0093172)
                Emily A. Hubbard (0096032)
                BILLER & KIMBLE, LLC
                8044 Montgomery Road, Suite 515
                Cincinnati, OH 45236
                Telephone: (513) 715-8711
                Facsimile: (614) 340-4620
                *abiller@billerkimble.com*
                *akimble@billerkimble.com*
                *ehubbard@billerkimble.com*

                www.billerkimble.com

                *Counsel for Plaintiff*

**Certificate of Service**

Plaintiff certifies that a copy of the foregoing will be automatically served on all parties via the Court's ECF system.

*/s/ Andrew Kimble*
Andrew Kimble