# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| William McGrothers, *On behalf of himself and those similarly situated*, Plaintiff, v. GT Pizza, Inc., *et al.*, Defendants. | Case No. 2:20-cv-4050 Chief Judge Algenon L. Marbley Chief Magistrate Judge Elizabeth Preston Deavers |

### SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between Plaintiff, William McGrothers ("Plaintiff"), individually and on behalf of all similarly-situated individuals identified in Section 1(B) below and, on the other hand, Defendants GT Pizza, Inc. d/b/a Domino's Pizza and Glen Stroud (collectively "Defendants"). Defendants and Plaintiff will be collectively referred to as the "Parties."

The Parties agree as follows:

1. **Purpose and Background**

    A. On August 7, 2020, this lawsuit, captioned *McGrothers v. GT Pizza, Inc., et al.* (the "Lawsuit"), was filed, and is currently pending in the United States District Court, Southern District of Ohio (Western Division) (the "Court"), case number 2:20-cv-4050.

    B. The Parties seek to resolve all claims raised in the Lawsuit. For purposes of this Agreement, the Parties have agreed to the following settlement collective:

    > All individuals who work or worked at any Domino's Pizza location owned/operated by Defendants from August 7, 2017 to July 11, 2022 ("Collective Period") who filed consent to join forms with the court in the matter of *William McGrothers v. GT Pizza, Inc., et al.* and for whom data was

       provided to Plaintiff's counsel in advance of mediation ("Collective Members").

  C. The purpose of this Agreement is to conclusively and finally resolve all of Plaintiff's and Collective Members' claims against Defendants that were raised as part of the Lawsuit and occurred during the Collective Period.

  D. The Parties agree and understand that this Agreement is part of a global settlement, and that this Agreement is neither valid nor enforceable unless the Court enters a written Order approving this Agreement. If the Court does not approve this Agreement, then this Agreement is null and void.

2. **Opportunity to Negotiate, Consider, and Consult with Counsel**

  A. The terms of this Agreement are the product of lengthy, arms-length negotiations between the Parties. The negotiations included a private mediation with Jerome F. Weiss on January 5, 2022 and on-going settlement negotiations until the Parties reached agreement on a Memorandum of Understanding on June 7, 2022.

  B. The Parties agree that the consideration given to support the obligations under this Agreement is adequate and sufficient in all respects and that the Parties have not made or received any promise, inducement, or concession not set forth in this Agreement in support of the obligations imposed.

  C. The Parties acknowledge that they have been represented by counsel throughout the negotiation of this Agreement and the Lawsuit.

3. **Settlement and Disbursement**

  A. To settle the Lawsuit, and in consideration of the release of claims and dismissal of the Lawsuit, Defendants agree to pay $650,000 (the "Settlement Fund"). The Settlement Fund accounts for all payments and claims raised in the Lawsuit by Plaintiff and Collective Members, including, but not limited to, those for all reimbursements, unpaid wages, liquidated damages, interest, attorneys' fees, expenses, claims administration fees, and service awards, during the Collective Period.

  B. The parties will retain a third-party claims administrator (the "Administrator") to establish a Qualified Settlement Fund ("QSF"), to facilitate the settlement payments, and to take reasonable steps to determine updated addresses for Collective Members. The costs associated with settlement administration will be paid to the Administrator from the Settlement Fund. Defendants will provide necessary data, including hours worked for all Collective Members, last known addresses, telephone numbers, email addresses, if available, and telephone numbers, to the Administrator and to Plaintiff's Counsel to calculate award amounts and to facilitate the settlement.

C. The Settlement Fund will be divided in the following way:

   i. First, any amounts awarded for attorneys' fees, expenses, administration expenses, and service awards will be subtracted from the Settlement Fund. The remaining amount is the "Net Settlement Fund."

   ii. Second, the Net Settlement Fund will be distributed as follows: Each Collective Member's individual award amount will be equal to the Collective Member's prorated share of the Net Settlement Fund based on their number of hours worked during the Collective Period.

D. The Settlement Fund will be disbursed as follows:

   i. Within 21 days of the Court granting approval of this Settlement Agreement, or by July 31, 2022, whichever date is later, Defendants will pay $650,000 to the QSF.

   ii. Within 14 days of Defendants paying the $650,000 into the QSF, the Administrator will mail Plaintiff, Collective members and Collective Counsel the amount due to them according to the formula explained in ¶ 3.C.

   iii. All amounts disbursed will be by check directed to each Collective Member. Checks may be cashed or negotiated within 365 days of being issued. After 365 days, the check will be void. The face of each check will contain the following language: "Void after 365 days."

   iv. For purposes of this Settlement, two-thirds of each Collective Member's individual settlement amount shall be treated as expense reimbursement payments for tax purposes. The remaining one-third of each Collective Member's individual settlement amount shall be treated as damages or liquidated damages for tax purposes. The Claims Administrator will issue a Form 1099 for the amounts allocated as damages. No part of the settlement payments represent fines or penalties.

   v. If there are any funds remaining in the Settlement Fund 365 days after the settlement checks were issued, and payment of the Service Award, attorneys' fees, costs and litigation expenses approved by the Court, they shall be distributed on a pro rata basis to all Claimants who timely negotiate their settlement checks or, if the remaining funds are insufficient for each Claimant who timely negotiated their settlement checks to receive an additional $10, distributed Cy Pres.

E. The Parties are responsible for ensuring their own proper tax treatment of the payments. In addition to the Settlement, Defendants will be responsible for their own portion of employer taxes (*e.g.*, FICA, FUTA, unemployment insurance), if any, arising from this

Agreement. The Parties also agree and understand any payments under this Agreement are not intended to, will not form the basis for, nor shall they be considered wages for calculating, or re-calculating, additional contributions to, or benefits under, any benefit or compensation plans maintained by the Defendants for the benefit of their employees and their employees' beneficiaries.

F. Defendants will, from the Settlement Fund, pay to Plaintiff $10,000 as a service award, subject to Court approval. This amount will come from the Settlement Fund. The service award will be payable by a separate check and will be considered as Form 1099 income.

G. The Court shall retain continuing jurisdiction over the Settlement. In the event that Plaintiff, Collective Counsel, and/or Collective Members believe he/they must petition the Court to enforce, implement, or interpret this Agreement and/or if Defendants fail to make one or more payments as outlined above, Plaintiff and Collective Members shall notify Defendants of the issue. Defendants will then have 14 days to cure the failure or issue. If Defendants do not cure the failure or issue, Plaintiff, Collective Counsel, and/or Collective Members can request from the Court an entry of judgment against Defendants jointly and severally for the amount suffered as a result of the breach of the Settlement Agreement (including approved attorneys' fees) plus applicable interest. Further, in the event they prevail, Plaintiff, Collective Counsel, and/or the Collective Members will be entitled to recover reasonable attorneys' fees and costs associated with obtaining such a judgment and its enforcement.

H. All payments set forth in this Section 3 are subject to Court approval of the Settlement.

I. Defendants' agreement to make these payments does not constitute an admission by them that the reimbursement amount calculated as part of this settlement is legally mandated or required. Defendants maintain their position that at all times they have paid a legally adequate reimbursement to Plaintiff and the Collective Members and that at all times Plaintiff and Collective Members have been paid the appropriate wage for all hours worked and that the under reimbursement and dual job claims are therefore without merit and liquidated damages are not warranted. By agreeing to the settlement and the amounts set forth in the agreement, Defendants do not agree with and expressly deny all liability and damages and reject Plaintiff's methodology of calculating alleged damages.

4. **Attorneys' Fees and Expenses**

A. Defendants agree not to object to an attorneys' fee award in the amount of one-third of the Settlement ($216,666.66). In addition, Defendants agree not to object to Collective Counsels' anticipated request for reimbursement of litigation expenses and administration expenses. These amounts will be subtracted from the Settlement Fund after any award for attorneys' fees.

B. This Agreement is not contingent on the Court approving the amount of attorneys' fees and costs noted above. In the event that the Court does not approve the above amount of attorneys' fees and costs or reduces that amount, the finding will not be a basis for rendering any unrelated section of the Agreement null, void, or unenforceable. Collective Counsel retain their right to appeal any decision by the Court regarding the attorneys' fees and costs and such appeal will not be deemed an appeal of this Agreement or the Settlement. The merits and substance of the Settlement will be approved by the Court separately and independently of the Court's decisions regarding Collective Counsel's application for attorneys' fees and costs. In the even the Court rejects some or all of Counsel's fee award, and that decision is appealed, in the event the Appellate Court approves attorneys' fees at a value less that what was agreed to by the Parties in this Agreement, the difference between the award and the proposed fees identified herein will revert to the Net Settlement fund for distribution in accordance with 3.D.v.

C. As noted above, the parties will retain a third-party Administrator to facilitate to facilitate the payments described above, to establish a Qualified Settlement Fund, and/or hold money in trust. The Claims Administrator's costs will be deducted from the Settlement Fund prior to calculation of the Collective Members' awards, subject to Court approval. The Claims Administrator and Collective Counsel will be authorized to take all reasonable steps to obtain up-to-date mailing addresses for Collective Members, including but not limited to processing Collective Member names through a skip-tracing database, calling or emailing Collective Members when their settlement checks are returned as undeliverable without a forwarding address, or taking other reasonable steps.

5. **Release**

   A. The term "Released Parties" includes Defendants and all related entities, along with all their predecessors, successors, parents, subsidiaries, franchisors, insurers, affiliates, owners, members, stockholders, officers, directors, employees, partners, shareholders, agents, legal representatives, affiliates, insurance carriers and all persons acting by, through, under or in concert with them. Nothing in this Release shall be construed as a waiver or release of Defendants' claims against any third-parties/non-parties to this action.

   B. Plaintiff and each Collective Member who cashes or otherwise negotiates his or her check releases all wage and hour claims relating to the facts asserted in the Lawsuit and accrued during The Released Period against Defendants, including claims relating to the under-reimbursement of delivery expenses, "dual-jobs" claims, overtime claims, and tip credit notice claims, including any related claims for liquidated damages, penalties, attorneys' fees and costs, and interest that could be pursued under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.,* the wage and hour laws of Ohio and any applicable state, local or municipal law or regulation, whether known or unknown; any and all claims for breach of contract relating to the facts asserted in this Lawsuit; any and all claims for unpaid or underpaid employee expense reimbursement relating to the facts asserted in this Lawsuit; any and all claims for unjust enrichment relating to the facts asserted in this Lawsuit; and

any and all derivative claims relating to unpaid wages or minimum wage compensation against the Defendants or Released Parties relating to the facts asserted in this Lawsuit.

**6. Administration Procedure and Timeline**

The Parties agree to the following timeline for the completion of the settlement process and dismissal of the Action:

A. <u>Settlement Approval:</u> Plaintiff will draft a Motion for Preliminary Settlement Approval and file it on or before July 8, 2022.

B. <u>Production of Collective Data:</u> On or before July 29, 2022, Defendants will transmit to Collective Counsel and the Claims Administrator the last known addresses, email addresses, phone number, Social Security Number, and hours worked during the Collective Period for Plaintiff and each Collective Member.

C. <u>Payment Calculation:</u> Within 14 days of the Court's Order granting Final Settlement Approval, the Administrator will calculate amounts due to Plaintiff and Collective Members under the Agreement in light of the Court's Order on fees, expenses, and other amounts to be deducted from the Settlement and provide this calculation to Collective Counsel and Defendants' Counsel. Collective Counsel and/or Defendants' Counsel will promptly provide the Administrator with any corrections or changes to those calculations.

D. <u>Funding of the QSF:</u> As described in ¶ 3 above, Defendants will pay $650,000 to the QSF within 21 days of the Court granting approval of this Settlement Agreement, or by July 31, 2022, whichever date is later.

E. <u>Settlement Payments</u>: As described in ¶ 3 above, within 14 days of receiving Defendants' payment to the QSF, the Administrator will issue checks to Collective Members, Plaintiff, and Collective Counsel the amount due to them under the Settlement Agreement. Envelopes containing a settlement check will be marked on its face with the words "GT Pizza Domino's Delivery Driver Settlement."

F. <u>Stipulation of Dismissal with Prejudice:</u> Within 30 days of the Administrator making the payments, the Parties will submit a stipulation of dismissal with prejudice, without costs or fees. Notwithstanding the foregoing, the Court shall retain continuing jurisdiction over the Settlement.

G. <u>Undeliverable Collective Member Checks:</u> If any checks are returned to the Administrator as undeliverable with a forwarding address, the Administrator will forward the payment to the forwarding address. If any checks are returned as undeliverable without a forwarding address, the Administrator and/or Collective Counsel will attempt to use any reasonable means to obtain an updated address for the Collective Member, such efforts including (but

not necessarily limited to) running the Collective Member's information through a skip-tracing, Change of Address, or other database, and contacting the Collective Member to obtain an updated address by phone or email. If the Administrator is able to obtain an updated address, the Administrator will forward the payment to the updated address.

7. **Notice under this Agreement shall be as follows:**

    **Plaintiffs' Counsel:**
    Emily Hubbard
    Biller & Kimble, LLC
    8044 Montgomery Road, Suite 515
    Cincinnati, OH 45236
    (513) 202-0710
    settlement@billerkimble.com

    **Defendants' Counsel:**
    Michael Mattingly
    Dinsmore & Shohl LLP
    255 East Fifth Street
    Suite 1900
    Cincinnati, Ohio 45202
    (513)977-8397
    Michael.mattingly@dinsmore.com

    Either party may modify their contact information for purposes of this section (*i.e.*, name, firm name, address, or email address) by providing written notice to the other party.

8. **Other Terms**

    A. By entering into this Agreement, Defendants in no way admit to any violation of law or any liability whatsoever to Plaintiff or to the Collective Members, all such liability being expressly denied. Defendants deny and continue to deny the allegations in the Lawsuit and deny and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action asserted in the Lawsuit. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for Collective or collective action treatment, other than for purposes of settlement.

    B. No modifications or amendments to any of this Agreement's terms, conditions, or provisions may be made except by written agreement executed by all Parties. Any material changes will be subject to approval by the Court presiding over the Lawsuit.

    C. This Agreement, including any exhibits, constitutes the entire agreement between the Parties, and all prior negotiations and understandings between the Parties shall be deemed merged into this Agreement.

D.  This Agreement is written jointly by the Parties and may not be construed against any one party as the drafter. If any provision(s) of this Agreement are held to be illegal, invalid, or unenforceable under present or future laws, any such provision(s) will be curtailed and limited only to the extent necessary to bring it within the requirements of the law. In that event, the remainder of this Agreement will thereafter be construed and enforced as if the illegal, invalid, or unenforceable provision(s) had never comprised a part of the Agreement. The remaining provision(s) of the Agreement will continue in full force and effect and will not be affected by any illegal, invalid, or unenforceable provision(s) or by their severance. To the extent the releases contained in the Agreement are held to be illegal, invalid, or unenforceable, the Parties shall proceed as follows:

   i.  The Lawsuit will resume unless: (a) a Party seeks reconsideration or appellate review of the decision denying approval of settlement, or (b) the Parties attempt to renegotiate the settlement and seek Court approval of the re-negotiated settlement.

   ii.  In the event any reconsideration and/or appellate review is denied, the Parties shall have no further rights or obligations under this Agreement. The Agreement shall be void and the Parties shall revert to their position *status quo ante*.

E.  The waiver by any party hereto of a breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach of any party, nor will any waiver operate or be construed as a rescission of this Agreement. No breach of this Agreement will permit the non-breaching party to repudiate the Agreement or refuse or fail to perform any obligations required hereunder.

F.  Ohio law governs this Agreement's validity, construction, and enforceability. This Court shall retain exclusive jurisdiction to enforce the terms of this Agreement, and all Parties submit to the jurisdiction of the Court for purposes of implementing, interpreting, and enforcing the terms of the Agreement.

G.  This Agreement may be executed by facsimile or electronically and in multiple counterparts, each of which will be deemed an original, but all of which together constitute one instrument.

H.  The Parties agree to promptly take all actions reasonably necessary to effectuate this Agreement, including but not limited to motions to the Court for approval of the Agreement and continuance of any intervening deadlines contrary to those contemplated by the Agreement.

I.  If any deadline under the Agreement falls on a Saturday, Sunday, or legal holiday, the Parties agree that the deadline will be deemed to be the next business day.

The undersigned hereby acknowledge and agree to all of the terms, conditions, and provisions of the above settlement agreement.

William McGrothers, on behalf of himself and as Collective Representative:

_____          _____
William McGrothers                                Date


On behalf of GT Pizza, Inc. and Glen Stroud:

_____
Name


_____          _____
Glen Stroud                                       Date