IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WILLIAM MCGROTHERS,**

    **Plaintiff,**

    v.                                    Civil Action 2:20-cv-4050
                                           Magistrate Judge Elizabeth P. Deavers

**GT PIZZA, INC.,** *et al.*,

    **Defendants.**

## ORDER

With the consent of the parties (ECF No. 69), 28 U.S.C. § 636(c), this matter is before the Court for consideration of Plaintiff's Unopposed Motion for Approval of Wage and Hour Settlement (ECF No. 66), which includes a request for attorneys' fees. For the following reasons, this Court **GRANTS** Plaintiff's Unopposed Motion for Approval of Wage and Hour Settlement, and the case is **DISMISSED WITH PREJUDICE**. This Court will retain jurisdiction over the settlement agreement.

### I. BACKGROUND

Plaintiff William McGrothers, on behalf of himself and all other persons similarly situated, initiated this lawsuit on August 7, 2020 by filing a Class and Collective Action Complaint against Defendants GT Pizza, Inc. d/b/a Domino's Pizza and Glen Stroud, as well as other Doe Corporation and John Doe Defendants. (ECF No. 1.) Plaintiff, a pizza delivery driver for Defendants, alleged various wage and hour violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), the Ohio Constitution, Article II, Section 34a ("Section 34a"), Ohio Revised Code § 4113.15 (Ohio's "Prompt Pay Act"), and Ohio Revised Code § 2307.60. (*Id.*)

Specifically, Plaintiff alleged that "[w]hen there are no deliveries to make, Defendants' delivery drivers are required to work inside Defendants' Domino's stores folding boxes, doing dishes, stocking coolers, mopping and sweeping the floor, tak[ing] the trash out, preparing food, and completing other duties inside the restaurant as necessary." (ECF No. 1 at PAGEID # 7, ¶ 52.) Plaintiff alleged that the delivery drivers were then paid "at or around minimum wage for the hours they worked inside the store" and "minimum wage minus a tip credit for the hours they work[ed] on the road making deliveries." (*Id.* at ¶¶ 53-54.) Plaintiff also alleged that Defendants "require[d] delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties." (*Id.* at PAGEID # 8, ¶ 60.) Plaintiff alleged that Defendants "reimburse[d] delivery drivers a set amount for each delivery they complete," and that "Defendants' reimbursement payments had no connection to the actual expenses incurred by the delivery drivers." (*Id.* at ¶¶ 62-63.) Plaintiff further alleged that the Defendants did not reimburse their drivers at the IRS standard mileage rate for the delivery miles driven, which they were required to do because they did not keep records of Plaintiff's actual expenses. (*Id.* at PAGEID ## 9-13, ¶¶ 64-71, 74, 77, 104.) Accordingly, due to these expenses, Plaintiff alleged that he and similarly situated delivery drivers were deprived of minimum and overtime wages guaranteed to them under the FLSA and Ohio law. (*Id.* at PAGEID ## 13-21, ¶¶ 110-163.)

On June 1, 2022, the Parties filed a Joint Written Status Report, advising the Court that they had "successfully reached an agreement to settle the claims asserted." (ECF No. 62.) Shortly thereafter, on July 11, 2022, Plaintiff filed the subject Motion, reporting that the parties

had entered into a Settlement Agreement to resolve this case, and seeking an Order (1) granting final approval of the Settlement Agreement as fair, reasonable, and adequate; (2) approving the requested award of attorney's fees and costs; (3) approving the service awards; (4) dismissing the action with prejudice; and (5) ordering the parties to carry out the remaining terms of the Settlement Agreement. (*Id.*) Defendants do not oppose Plaintiff's request. (*Id.*) The matter is thus ripe for judicial review.

## II. LAW & ANALYSIS

This Court has reviewed Plaintiff's unopposed Motion for Settlement Agreement, ECF No. 66, and the subject Settlement Agreement, ECF No. 66-1, and approves the proposed Settlement Agreement for the following reasons.

**A.     Reasonableness of the Settlement Agreement**

Before approving a settlement agreement, this Court must determine if the settlement is "fair, adequate, and reasonable, as well as consistent with the public interest." *Bailey v. Great Lakes Canning, Inc.*, 908 F. 2d 38, 42 (6th Cir. 1990) (citing *U.S. v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 351 (6th Cir. 1986); *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983)). To do so, the Court balances several factors: (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery completed; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest in the settlement." *Vigna v. Emery Fed. Credit Union*, No. 1:15-CV-51, 2016 WL 7034237, at *3 (S.D. Ohio Dec. 2, 2016) (internal citations omitted). In reviewing a proposed class and collective action settlement, the district court has "'wide discretion in assessing the weight and applicability' of the relevant factors." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 754 (6th

Cir. 2013) (quoting *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992)).

Here, Plaintiff asserts that the following factors are relevant to the Court's decision. (ECF No. 66 at PAGEID ## 420-424.) He further contends that all relevant factors weigh in favor of the Court approving this Settlement Agreement. (*Id.*) The Court agrees.

### 1. *Risk of Fraud or Collusion*

The evidence before the Court clearly reflects that the Settlement Agreement is the product of arms-length negotiations over many months, including through private mediation with an independent mediator. (*See* ECF No. 66 at PAGEID #; ECF No. 66-2 at PAGEID # 447.) "The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Bert v. AK Steel Corp.*, No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) (internal citations omitted). In this context and upon the representation of Plaintiff's Counsel, there is no reason to believed that the settlement involved fraud or collusion, and this Court finds negotiations were conducted at arm's-length. Accordingly, this factor favors approval of the Settlement Agreement.

### 2. *Complexity, Expense, and Likely Duration of Litigation*

This Court notes that wage and hour class/collective actions are "inherently complex, and settlement avoids the costs, delays, and multitude of other problems associated with them." *Carr v. Guardian Healthcare Holdings, Inc.*, No. 2:20-cv-6292, 2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022) (citing *Brandenburg v. Cousin Vinny's Pizza, LLC,* No. 3:16-CV-516, 2019 WL 6310376, at *3 (S.D. Ohio Nov. 25, 2019); *Wright v. Premier Courier, Inc.*, No. 2:16-cv-420, 2018 WL 3966253, at *3 (S.D. Ohio Aug. 17, 2018); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)). Plaintiff also submits that "[t]his case . . . presented a

unique complexity because the Defendants asserted that some, but not all, of the Collective Members had entered into arbitration agreements," so "if the case were to proceed, the parties would potentially be required to litigate 170 individual arbitrations as well as a FLSA Collective Action for the Collective Members that did not enter into arbitration agreements. (ECF No. 66 at PAGEID # 423.) This point is well taken, and the Court is mindful that if this matter was not settled at this time then there likely would be motions practice, case management conferences, trial preparation, and more – both in this action and in the flurry of new arbitration actions that would follow. Needless to say, this would cause the parties considerable expense and time. Accordingly, this factor weighs in favor of approving the Settlement Agreement.

      3.     ***Amount of Discovery Completed***

To ensure the "Plaintiff has 'had access to sufficient information to evaluate [their] case and to assess the adequacy of the proposed Settlement[],' the Court must consider the amount of discovery engaged in by the parties." *Carr*, 2022 WL 501206, at *5 (quoting *Wright*, 2018 WL 3966253, at *4 (quoting *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2005))). Here, the parties exchanged the most relevant pieces of information in this case early in discovery, including payroll records relating to the delivery drivers' hours worked and wages paid, records of the reimbursement payments made to delivery drivers, and sampling records of deliveries completed to track miles driven and the number of deliveries per run. (ECF No. 66 at PAGEID # 423.) This allowed the parties to evaluate the strengths and weaknesses of each claim, and it significantly informed the parties' settlement negotiations. (*Id.*) To this end, the Court notes that Plaintiff's Counsel has litigated many other cases involving pizza delivery drivers, allowing them to effectively evaluate the remaining complexities of the case and the appropriateness of a settlement with additional or unnecessary discovery. This Court therefore

finds that Plaintiff's Counsel's experience in this type of litigation and the exchange of information ahead of mediation was sufficient to inform fully the settlement negotiations. *Wright*, 2018 WL 3966253, at *5. This leads the Court to believe the parties made an informed decision to enter into this settlement agreement. This factor weighs in favor of approving the Settlement Agreement.

### 4. *Likelihood of Success on the Merits*

A plaintiff's probability of success on the merits is the "most important factor" for a court to consider in approving a wage and hour class/collective action settlement. *See Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-729, 2012 WL 1945144, at *6 (S.D. Ohio May 30, 2012) (citing *In re General Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). If the Plaintiff's likelihood of success on the merits is low, "the more desirable a favorable settlement appears." *Id.* (internal citations omitted). Here, Plaintiff asserted three types of claims: (1) that Defendants under-reimbursed their delivery drivers for expenses incurred as a result of the workers using their own cars for deliveries (the "Under-Reimbursement Claim"); (2) that Defendants improperly took a tip credit for hours worked while making deliveries by failing to pay the agreed-upon wage rate by under-reimbursing Plaintiffs for delivery expenses (the "Tip Credit Violation Claim"); and (3) that Defendants violated Ohio's Prompt Pay Act, Ohio Revised Code § 4113.15 (the "Prompt Pay Act Claim"). (ECF No. 66 at PAGEID ## 420-422.)

Each of these claims, however, faces stringent opposition by Defendants which presents a substantial barrier to Plaintiff's success on the merits. First, Plaintiff and Defendants disagree over the method for calculating the damages for Plaintiff's Under-Reimbursement Claim, as Plaintiff believes Defendants were required to reimburse at the IRS standard business mileage rate while Defendants believe they were only required to "reasonably approximate" the drivers'

incurred expenses for reimbursement. (*Id.* at PAGEID ## 420-421.) This dispute also impacts resolution of Plaintiff's Tip Credit Violation Claim, because if Defendants could prove their reimbursement rates covered all expenses, then the Plaintiff's Tip Credit Violation Claim would be worth $0.00. (*Id.* at PAGEID ## 421-422.) On the other hand, if Plaintiff's Tip Credit Violation Claim was valid, it would be worth approximately $225,000.00. (*Id.*) This dispute also bleeds into Plaintiff's Prompt Pay Act Claim, which "rise[s] and fall[s]" with the alleged underlying wage violation. (*Id.* (citation omitted).)

Given these serious questions, which could impact the value of Plaintiff's claims by hundreds of thousands of dollars, there are several substantial barriers to Plaintiffs' success on the merits. Weighing these uncertainties against the certainty and finality of a settlement that would also eliminate further expense and delay, this factor counsels in favor of approving the settlement agreement. The amount of recovery, combined with the uncertainty of any recovery if litigation proceeded, demonstrates the value of the proposed settlement outweighs the likelihood of success on the merits. Accordingly, this factor weighs in favor of approving the Settlement Agreement.

### 5. *Judgment of Experienced Counsel*

Plaintiff's Counsel, who submit that they are "well-versed in delivery driver cases," suggest that the proposed final settlement is fair, adequate, and reasonable. (ECF No. 66 at PAGEID # 424.) "The recommendation of [] [c]ounsel, skilled in class actions and corporate matters, that the Court should approve the [s]ettlement is entitled to deference." *Wright*, 2018 WL 3966253 at *5 (citing *Williams*, 720 F.2d at 922–23 ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs . . . . [T]he deference afforded counsel should correspond to the amount of discovery completed and

7

the character of the evidence uncovered."); *Kritzer*, 2012 WL 1945144, at *7 ("The Court gives weight to the belief of experienced counsel that a settlement is in the best interests of the class.")). The Court gives deference to counsel's belief that the Settlement Agreement is fair and reasonable – particularly considering counsel's experience in this type of litigation. *See Mullins v. S. Ohio Pizza, Inc.*, No. 1:17-CV-426, 2019 WL 275711, at *5 (S.D. Ohio Jan. 18, 2019) (noting that Plaintiff's Counsel have "established an expertise in 'pizza delivery driver' litigation"). Accordingly, this factor weighs in favor of approving the Settlement Agreement.

### 6. *Reaction of Absent Class Members*

Plaintiff submits that "[e]ach of the Collective Members have affirmatively opted-in to this litigation and delegated settlement authority to Plaintiff William McGrothers." (ECF No. 66 at PAGEID # 424.) Accordingly, the reaction of absent class members plainly supports approval.

### 7. *Public Interest*

The final factor the Court must consider is whether the public interest would be served by settlement. Because the parties' Settlement Agreement would end potentially long and protracted litigation, the Court finds that this factor weighs in favor of approval. *Kritzer*, 2012 WL 1945144, at *8. ("While this case is not of general public interest, the public interest in favoring settlement certainly applies here, as the proposed settlement ends potentially long and protracted litigation."). As the Court noted in *Kritzer*, there is a "public interest favoring settlement . . . as the proposed settlement ends potentially long and protracted litigation." *Id.* at *6 (citing *In re Broadwing*, 252 F.R.D. at 369). The public interest is served where a settlement "provides relief to the class members, avoids further litigation, and frees the Court's judicial resources." *Mullins*, 2019 WL 275711, at *3. Accordingly, this factor also weighs in favor of settlement approval.

In sum, each of the seven fairness factors weighs in favor of approving the Settlement Agreement.

**B.     Attorneys' Fees.**

An award of attorneys' fees must be reasonable, meaning it must be "one that is adequate to attract competent counsel, but . . . [does] not produce windfalls to attorneys." *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999) (internal quotation marks and citations omitted).  There are two methods for determining whether a fee is reasonable: the percentage-of-the-fund method and the lodestar method.  *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App'x 496, 498 (6th Cir. 2011).  The Sixth Circuit has approved both methods.  *Rawlings v. Prudential-Bache Prop., Inc.*, 9 F.3d 513, 515–16 (6th Cir. 1993).  When, as here, a settlement creates a common benefit fund for a class, courts prefer the percentage-of-the-fund method for awarding fees in FLSA cases absent compelling reasons to the contrary.  *Waters v. Pizza to You, L.L.C.*, No. 3:19-CV-372, 2022 WL 3048376, at *4 (S.D. Ohio Aug. 2, 2022) (internal citations omitted).  This approach "encourages efficiency, judicial economy, and aligns the interests of the lawyers with the class."  *Smith v. Loc. Cantina, LLC*, No. 2:20-cv-03064, 2022 WL 1183325, at *4 (S.D. Ohio Apr. 19, 2022) (citing *Est. of McConnell v. EUBA Corp.*, No. 3:18-CV-00355, 2021 WL 1966062, at *5 (S.D. Ohio May 17, 2021)).

When using the percentage-of-the-fund method, courts in this Circuit generally approve of awards that are one-third of the total settlement.  *See, e.g.*, *Rotuna v. W. Customer Mgmt. Grp., LLC*, 4:09-cv-1608, 2010 WL 2490989, at *8 (N.D. Ohio Jun. 15, 2010) (approving attorneys' fees in the amount of one-third of the settlement fund).  The lodestar figure represents the number of hours spent multiplied by reasonable rates.  *Reed*, 179 F.3d at 471.  Although not mandatory, courts frequently cross-check counsel's request for percentage-of-the-fund awards

9

against the lodestar. *Van Horn*, 436 F. App'x at 501. A district court has discretion to select which method is appropriate in light of the "unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them." *Id.*

A district court also analyzes the following factors in determining whether the fee is reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo v. Morales*, No. 2:12-cv-650, 2015 WL 13021899, at *6 (S.D. Ohio Dec. 22, 2015) (citing *Kritzer*, 2012 WL 1945144, at *9 (citing *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974))). As discussed below, each of these factors weighs in favor of approving the Settlement Agreement.

### 1. *Value of Benefit to Plaintiff Class*

Here, the parties propose a percentage-of-the-fund method. (ECF No. 66 at PAGEID ## 424-427.) If approved, Plaintiff's Counsel would receive attorneys' fees of $216,666.66, amounting to one-third of the total settlement proposed. (*Id.*) In support, Plaintiff submits that "[b]ased on the data produced by Defendants prior to mediation, the settlement proceeds exceed the amount of total unpaid wages" and "[a]fter deducting the requested attorneys' fees, litigation costs, administrative costs, and incentive award, the settlement proceeds *still* provides over 90% of the Collective Members' unpaid wages." (*Id.* at PAGEID ## 427-428 (emphasis added).) Plaintiff characterizes this as "an excellent result considering there was a chance the drivers could have lost altogether." (*Id.* at PAGEID # 428.) The Court agrees, as this result exceeds what is typically recovered in these types of cases. *See Dillworth v. Case Farms Processing, Inc.*, No.

5:08-cv-1694, 2010 WL 776933, at *8 (N.D. Ohio Mar. 8, 2010) (explaining that the average recovery in class actions is 7-11% of claimed damages).  Accordingly, this factor also weighs in favor of awarding counsel their proposed attorneys' fees.

### 2. *Value of Service*

Plaintiff's counsel has billed $103,320.00 in the matter to date.  (ECF No. 66 at PAGEID # 429; *see also* ECF No. 66-2 at PAGEID ## 448-449.)  Counsel submits that this amounts to an hourly rate of $354.60 and a lodestar multiplier of approximately 2.1 compared to the award they seek ($216,666.66).  (ECF No. 66 at PAGEID # 429.)  Counsel argues that this is reasonable given counsel's "deep level of expertise in the niche practice of challenging the sufficiency of delivery driver reimbursements."  (*Id.*)  Counsel also argues that "[i]n addition to the hours class counsel has worked on this particular pizza delivery driver case, [they have] worked thousands of hours on pizza delivery driver cases and other types of wage and hour cases throughout the country in recent years."  (*Id.* (internal citations omitted).)  Finally, counsel argues that they "will put in more time on this case after final approval," which only further supports the requested fee award.  (*Id.* at PAGEID # 430.)

The Court agrees.  As discussed, Plaintiff's counsel in this action is very experienced in this area of the law.  This Court previously – and repeatedly – has determined that their hourly rates are reasonable considering their experience, skill, and areas and level of expertise in the area of pizza delivery driver litigation.  *See Honaker v. Wright Bros. Pizza*, No. 2:18-CV-1528, 2021 WL 5240235, at *5–6 (S.D. Ohio Apr. 5, 2021).[1]  Finally, while the requested rate is higher

---

[1] This Court recently approved a settlement in a separate pizza delivery driver reimbursement case in which Mr. Kimble, Plaintiff's trial attorney in this action, charged his services at $600/hour – not his previous rate of $550/hour, which he charged here.  *Clark v. Pizza Baker, Inc., et al.*, No. 2:18-CV-157, 2022 WL 16554651, at *6 (S.D. Ohio Oct. 31, 2022) ("Despite the increase in Mr. Kimble's hourly rate, this new amount reflects the increase in value Mr. Kimble

11

than the amount billed by counsel, awards of common-fund attorney fees in amounts two or three-times greater than the lodestar have been found reasonable. *See Johnson v. Midwest Logistics Sys., Ltd.*, 2:11-cv-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) (concluding a lodestar multiplier of 2.25 was reasonable); *Lowther v. AK Steel Corp.*, 2012 WL 6676131, at *5 (S.D. Ohio Dec. 21, 2012) (approving a multiplier of 3.06 in an Employee Retirement Income Security Act case and citing cases that found multipliers up to 8.74 to be reasonable). Accordingly, this factor also weighs in favor of awarding the proposed attorneys' fees.

### 3. *Whether Services Undertaken on Contingency Fee Basis*

Third, Plaintiff's Counsel undertook representation on a "wholly-contingent basis, with no guarantee of recovery." (ECF No. 66 at PAGEID # 429.) In doing so, Plaintiff's Counsel "undertook the risk of not being compensated" at all. *O'Bryant v. Pillars Protection Servs., LLC*, No. 2:19-cv-1354, 2020 WL 7486712, at *6 (S.D. Ohio Dec. 17, 2020) (quoting *Kritzer*, 2012 WL 1945144, at *9). As Plaintiff's Counsel has not been compensated since the beginning of this litigation, this factor weighs in favor of this Court granting an award of attorneys' fees. *See Feiertag v. DDP*, No. 14- cv-2643, 2016, WL 4721208, at *7 (S.D. Ohio Sep. 9, 2016).

### 4. *Society's Stake in Attorneys' Fees*

Society benefits when attorneys take on class actions that ensure "claimants with small claims may pool their claims and resources." *Waters*, 2022 WL 3048376, at *5. This benefit is "particularly acute in wage and hour cases brought on behalf of minimum wage workers." *Id.* (quoting *Arp v. Hohla & Wyss Enters., LLP*, No. 3:18-cv-119, 2020 WL 6498956 (S.D. Ohio

---

brings to the litigation from his years of experience on pizza delivery driver cases and weighs in favor of approval of the requested fees.").

Nov. 5, 2020)). A "public interest" exists in ensuring that attorneys who represent clients in class actions are adequately compensated, so that attorneys will continue to take on such cases in the future. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011). Like *Waters*, this action allows low-wage workers to recover unpaid wages, many of whom would likely not have been willing or able to pursue their claims individually. *See also Mullins*, 2019 WL 275711, at *5. Accordingly, this factor also weighs in favor of awarding counsel their proposed attorneys' fees.

### 5. *Complexity of Litigation*

As previously discussed, this case was a complex wage and hour class and collective action with unresolved legal questions and substantial factual investigation, to which Plaintiff's Counsel brought unique expertise. Accordingly, this factor also weighs in favor of awarding counsel their proposed attorneys' fees.

### 6. *Professional Skill of Counsel*

The attorneys in this matter were highly skilled, and as referenced above have prosecuted many other similar wage-and-hour claims on behalf of pizza delivery drivers. *Honaker*, 2021 WL 5240235, at *6 (noting that Plaintiff's Counsel "is experienced in litigation on behalf of restaurant and other low-wage workers, has successfully represented plaintiffs in many delivery driver reimbursement actions, and has achieved several significant legal results for clients related to delivery driver wage and hour litigation"); *Mullins*, 2019 WL 275711, at *5 (noting that Plaintiff's Counsel have "established an expertise in 'pizza delivery driver' litigation"). Accordingly, this factor also weighs in favor of awarding counsel their proposed attorneys' fees.

**C.     Expenses and Administration Fee.**

Plaintiff's Counsel also seeks a reimbursement award of $11,850.51 for "advanced

13

litigation costs," such as "the filing fee, mediation fees, and costs associated with analyzing Defendants' mileage and reimbursement records."  (ECF No. 66 at PAGEID # 431.)  Counsel also submits that the proposed Settlement Agreement "provides that the costs of settlement administration will be deducted from the settlement fund," and the attached Declaration submits that "CAC Services Group, LLC estimates that the settlement administration will cost $3,452.47."  (*Id*; ECF No. 66-2 at PAGEID # 449.)

Under the common fund doctrine, Plaintiff's Counsel will be entitled to reimbursement expenses that were reasonable and necessary in resolving a case.  *Mullins*, 2019 WL 275711, at *5 (approving request for $6,310.55 in expenses resulting from filing fees, mediation costs, and class notice costs).  These expenses are reasonable as they are in line with expenses and administration fees incurred in similar litigation.  *See e.g., Brandenburg*, 2019 WL 6310376, at *7 (holding that $15,266.88 in litigation expenses were reasonable and necessary in litigating and resolving a wage and hour pizza delivery driver case).  Accordingly, this factor also weighs in favor of approving the Settlement Agreement.

**D.    Class Representative Service Award.**

Finally, the Court approves a $10,000.00 service award for Plaintiff.  (ECF No. 66-1 at PAGEID # 438.)  Courts recognize and grant "incentive awards [as] efficacious ways of encouraging member[s] of a class to become class representatives and rewarding individual efforts taken on behalf of the class."  *Hogan v. Cleveland Ave Rests. Inc.*, No. 2:15-CV-2883, 2019 WL 6715976, at *6 (S.D. Ohio Dec. 10, 2019) (quoting *Osman v. Grube, Inc.*, Case No. 3:16-cv-802, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018) (citing *Hadix v. Johnson*, 322 F. 3d 895, 897 (6th Cir. 2003))).  Plaintiff argues that this award is warranted because the Plaintiff "spent time and effort working with Class Counsel on this case" and because Plaintiff "bore risk

14

in proceeding with the case, including financial and reputational risk." (ECF No. 66 at PAGEID # 431. The Court agrees, and notes that Plaintiff's $10,000 service award is "in line with what is typically awarded in these cases." *See Clark*, 2022 WL 16554651, at *8 (citing *Hogan*, 2019 WL 6715976, at *6; *Chrismon v. Meadow Greens Pizza*, No. 5:19-cv-155BO, 2020 WL 3790866, at *6 (E.D.N.C. July 7, 2020) (listing pizza delivery driver cases granting a $10,000 service award for the named plaintiff)). Accordingly, this factor also weighs in favor of approving the Settlement Agreement.

### III. CONCLUSION

In sum, all of the relevant factors weigh in favor of approving this settlement. The Court finds the settlement reflects a reasonable compromise over issues and therefore is fair and reasonable. *See Gentrup v. Renovo Servs., LLC*, No. 1:07CV430, 2011 WL 2532922, at *2 (S.D. Ohio June 24, 2011) ("If a settlement in an employee FLSA suit reflects 'a reasonable compromise issues', such as FLSA coverage and/or computation of back wages that are 'actually in dispute,' the Court may approve the settlement 'in order to promote the policy of encouraging settlement of litigation.'") (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). Accordingly, the Court **GRANTS** Plaintiff's Unopposed Motion for Approval of Wage and Hour Settlement, ECF No. 66, **APPROVES** the Settlement Agreement, ECF No. 66-1, and **ORDERS** that this case be **DISMISSED WITH PREJUDICE**. This Court shall retain jurisdiction over this matter for the purpose of enforcing the Settlement Agreement. The Clerk is **DIRECTED** to close this case.

    IT IS SO ORDERED.

Date: November 9, 2022                        /s/ *Elizabeth A. Preston Deavers*
                                                      ELIZABETH A. PRESTON DEAVERS
                                                      UNITED STATES MAGISTRATE JUDGE